IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN STEPHEN LALONDE<br>24029 SOUTH SHORE DRIVE<br>EDWARDSBURG, MI 49112 | ) ) ) | COMPLAINT |
| | ) | Cause No: 3:18-cv-548 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA<br>C/O Office of the Attorney General<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | ) ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| JEFFERSON SESSIONS, in his official<br>Capacity as Attorney General<br>Office of the Attorney General<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | ) ) ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| FEDERAL BUREAU<br>OF INVESTIGATION<br>J. Edgar Hoover Building<br>935 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20535 | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COME NOW** the Plaintiff, by and through undersigned counsel, and alleges as follows:

**PARTIES**

1. Plaintiff John Stephen Lalonde ("Lalonde") is an adult male citizen of the State of Michigan and formerly resided in the State of Indiana.

2. Defendant United States of America ("USA") is a jural entity and a proper defendant under 18 USC § 925A.

3. Defendant Jefferson Sessions is sued in his official capacity as the Attorney General of the United States of America. As Attorney General, Defendant Sessions is responsible for administering and executing the laws, customs, practices and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

4. Defendant Federal Bureau of Investigation is sued as the entity that oversees and conducts the National Instant Criminal Background Check System ("NICS") and is responsible for enforcing the laws, customs, practices and policies complained of in this action.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331, 1343, 1346, 2201, 2202; 18 U.S.C. §925A; and 42 U.S.C. §1983

2

and §1988, since the United States and the Federal Bureau of Investigation are Defendants and the case arises under the Constitution and laws of the United States.

6.  Venue is proper under 28 U.S.C. §1391.

## STATEMENT OF FACTS

### a.    Applicable Law

7.  18 U.S.C. §922(n) provides that:

"It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to...receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

8.  18 U.S.C. §921(a)(20) provides that:

The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

9.   The vast majority of firearms are purchased through Federal Firearm Licensees ("FFL").

10. FFLs are required to preform a background check via the National Instant Criminal Background Check System ("NICS") prior to selling a firearm to an individual.

11. FFLs are unable to sell to individuals who fail a background check ("Denial"), as the FBI has determined them to be prohibited persons.

12. Individuals who received a denial from NICS are purportedly able to file an appeal with the FBI.

13. After October 23rd, 2015, the FBI stopped processing NICS appeals despite still being authorized to process them.

14. Individuals who wish to purchase a firearm may do so by private transfer.

15. However, it is illegal under federal law for a person to sell a firearm to a prohibited person.

16. It is customary for private sellers to inquire as to whether a person is prohibited in order to avoid criminal liability under federal and state law.

17. Thus, it is virtually impossible to lawfully purchase a firearm if a person is deemed prohibited by the FBI even if the FBI is incorrect or the person's prohibited status has changed.

4

18. Upon information and belief, Plaintiff believe that there is a high chance of erroneous denials and many thousands of persons are currently wrongful denied.

19. Judge Richard Mark Gergel presided over the first case to conduct discovery on NICS. The United States District Court for the District of South Carolina Charleston Division recently published its findings in *Sanders v. United States,* Civil Action No. 2:16-2356-RMG, 2018 U.S. Dist. LEXIS 101423 (D.S.C. June 18, 2018).

20. That action and fifteen other related actions were filed by "surviving victims and the estates of deceased victims who suffered injury or death at the hands of Dylan Roof when he entered a bible study group at Emanuel A.M.E. Church on June 17, 2015 and murdered nine persons with a Glock Model 41 pistol. Under federal law, Roof's narcotics arrest on February 28, 2015, disqualified him from receiving a firearm. Nevertheless, he was able to purchase the Glock pistol from a federally licensed firearms dealer on April 11, 2015 because the [FBI's NICS] failed to discover Roof's disqualifying arrest record". *Id* *1.

21. "Notably the NICS examiners are denied access to the FBI-administered N-DEx system, a comprehensive federal database created 9/11 that contains over 500 million criminal justice records. This database

includes incident and arrest records, booking reports, pretrial investigations, supervised release reports, photos and identifications records." *Id*. At *10.

22. The Court found that "[a] simple Google search would have produced the contact information for the Columbia Police Department. But the NICS SOPs did not address this potential situation and NICS practice prohibited any general internet search." *Id*. At * 16.

23. The Court found "[t]he fault here [in not denying Dylan Roof] lies in abysmally poor policy choices made regarding the operation of the NICS. The most obvious of these poor policy choices was the decision to deny the examiners access to the most comprehensive federal criminal justice database, N-DEx." *Id* at * 17.

24. And further found that the Government's rationale in denying its examiners from having access to the database "simple nonsense". *Id* at * 17.

25. While the Court could not find liability under the Federal Tort Claims Act the Court still opined that "perhaps the FBI, learning fully the detail of the failure of its system in this tragic series of event, will promptly take corrective steps to prevent a similar failure of the system". *Id* at * 20-21.

26. Thus, Defendants are on notice as to the many errors in their system yet take no action to correct their procedures.

27. On information and belief, Plaintiff believe giving NICS examiners access to the N-DEx would make the odds of erroneous denials go down dramatically. This is because NICS examiners would have a full record to determine when a crime occurred and (in the case of similarly named people) who had committed the crime and whether the crime had been expunged or the disability relieved.

28. Providing access to this database would be a minimal burden to Defendants because as Judge Gergel observed, the N-DEx is located in the same building as the NICS.

29. Processing appeals would also be a minimal burden upon Defendants.

**b.        Capable of Evading Review**

30. This Court is allowed to retain jurisdiction of a case if it is capable of repetition and evading review even if the underlying events which give rise to the case and controversy is later mooted. *Del Monte Fresh Produce Co. v United States* 386 App. D.C. 406, 570 F 3d 316 (2009).

31. Under the capable of repetition yet evading review exception to mootness, the plaintiff must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Clarke v. United States,* 915

F.2d 699, 704, 286 U.S. App. D.C. 256 (D.C. Cir. 1990) (en banc) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)) (alteration in original); *see also Honig v. Doe,* 484 U.S. 305, 318-20, 108 S. Ct. 592, 98 L. Ed. 2d 686 & n.6 (1988).

32. Here, it is Plaintiff's belief that Defendants will attempt to moot this case by correcting Plaintiff's records at the onset of litigation.  As fully described below, that is what occurred in several prior cases.

33. If that event occurs, Plaintiff requests that this Court retain jurisdiction of this matter.

34. Plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy. *City of Houston, Tex. v. Dep't of Housing & Urban Dev.,* 24 F.3d 1421, 1429-30, 306 U.S. App. D.C. 313 (D.C. Cir. 1994). In *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 125, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974), the Supreme Court held that although a claim for injunctive relief preventing payment of welfare benefits during a strike was moot because the strike had ended, the employers' request for declaratory relief was not moot because the state's ongoing policy of paying strike benefits was, on the employers' theory of the case, "immediately and directly injurious to the [employers'] economic positions."

8

35. Here, Plaintiff's challenge is to Defendants ongoing policy whereby it does not process NICS appeals.

36. Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the record correction with the originating agency and take all necessary steps to correct the record in NICS. This is not a discretionary duty.

37. However, the Defendants and the FBI in particular is improperly shifting their burden to the individual to follow up with various courts or jurisdictions. This is the same scenario found in *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 903 F. Supp. 2d 333, 341 (D. Md. 2012). In *Ross*, the district court found that the defendant was improperly shifting the burden and that:

> [t]he regulations make clear that the burden falls on the NICS Section to conduct additional research "to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 C.F.R. § 25.6(c)(1). The NICS Section has three business days to ascertain whether a buyer's criminal record bars receipt of a firearm, and if it is unable to make a final decision, the FFL can transfer the firearm to the purchaser.

*Id*. at fn. 13.

38. This has been an ongoing issue with Defendants and they have been on notice as early as May 8, 2016 when the case *Gregory Michael Ledet v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-00865-ABJ was filed. Since that case, at least four

9

others were filed: *Robert Boyd Rood v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:17-cv-00839-KBJ; *Robert Earl Rowe v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01510-APM; and *Charles Norfleet Hughes v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01425-APM.

39. All the aforementioned cases were filed and then quickly the government defendant(s) "voluntarily" provided the relief sought in the actions. All five Plaintiffs in those cases were granted their certificates to purchase their firearms. This essentially mooted those cases, yet it is apparent that the issues underlying the present action are evading review and are repeating day in and day out.

40. Defendants are denying Plaintiff his Second Amendment rights. There are no bases for Defendants to deny Plaintiff his firearms and his Second Amendment rights.

41. On January 20, 2016, USA Today reported that the FBI is halting "the processing of thousands of appeals from prospective buyers whose firearm purchase attempts have been denied."[1]

---

1 http://www.usatoday.com/story/news/nation/2016/01/19/fbi-guns-background-checks/78752774/?siteID=je6NUbpObpQ-BbTAhOhBe3xFjZr6NOLwLQ

42.   Pursuant to a Freedom of Information Act request made in April 2016, the FBI finally provided documents confirming that it in fact stopped processing appeals and "Incoming Appeal Mail will not be processed."  See Exhibit "1".

43. In this production under FOIA, many emails referencing the stoppage are included.  For instance, one heavily redacted email states "The AST has five business days to tell a denied individual the reason for their denial.  However, the AST Examiners are not performing any appeal work due to the increased volume."  *Id*.  This email is dated December 17, 2015.

44. On January 13, 2016, another email stated, "We stopped processing front-end mail on 11/25/2015."  *Id*.

45. This document production also references the FBI's procedure for verifying records by using fax machines and making one attempt to retrieve records.

46. A NICS team member is only required to make one request for a record.  If the agency or court does not respond to the NICS team member's fax, then the NICS member has no further requirement under the NICS procedures to do anything.

47. There are also instructions to <u>not</u> request documents from courts if that court charges for documents.

48. This leaves Plaintiff and all others similarly situated with an inadequate remedy to have their issues resolved without resorting to the courts.

49. Defendants' refusal to process Plaintiff's NICS appeal infringes upon his Second Amendment rights, chills protected activity and violates Plaintiff's due process rights.

50. Plaintiff seeks declaratory relief (as well as other relief) that this policy violates Plaintiff's Second Amendment rights.

### I.    **Plaintiff John Stephen Lalonde**

51. Lalonde is a Michigan resident who moved from Indiana after filing his NICS Appeal and was an active firearm collector. Lalonde is also a name partner in a local actuary firm.

52. Lalonde is not a prohibited person.

53. Lalonde attempted to purchase a firearm and was subject to a NICS background check in the Spring of 2016.

54. Lalonde filed a NICS Appeal in May of 2016.

55. Lalonde received correspondence from the FBI dated June 06, 2016, which informed him that he was a prohibited person, and referenced a record held by the South Bend Police Department.

56. There is no claim in this letter as to what specifically Lalonde was denied for, but instead, he received a form letter reciting the various prohibitory laws related to a felony conviction.  See Exhibit "2."

57. A NICS Transaction Number (NTN) was assigned to Lalonde when he was denied.  The NTN for this specific transaction is 3826T40.

58. Lalonde retained counsel to investigate the situation. Counsel determined that the South Bend Police Department held a record for a DUI arrest dating back to February of 2001.  Because Lalonde was able to purchase firearms from an FFL in 2015, it became apparent that the South Bend Police Department had accidentally sent an old arrest record to the FBI on or about January of 2016

59. Because the FBI does not require NICS employees to verify or obtain orders of the court, and because no one in the NICS section apparently checked the date of the arrest, the NICS database was updated to falsely indicate that Lalonde was a prohibited person.

60. Moreover the letter sent in reply to Lalonde references a prohibiting conviction, but the record the FBI held referred to a felony arrest, not conviction.

61. Counsel for Lalonde worked with the South Bend Police Department and local courts to update the arrest record to the actual case deposition, a

13

misdemeanor plea, and date of resolution, April 2, 2001. The updated record and a copy of the final order in the case, was transmitted to the FBI NICS section by the South Bend Police Records Division on or about August 4, 2016. See Exhibit "3."

62. Because the FBI no longer processes NICS Appeals, Lalonde remains prohibited from purchasing a firearm from an FFL.

63. Lalonde is not a prohibited person, but the federal government believes he is somehow prohibited from owning, possession, storing or transferring a firearm due to a felony conviction, which he never had, stemming from an old arrest record, which the FBI should have noted the date on.

64. For someone in his position as a firearm collector and respected local professional, the erroneous belief of the federal government that he is a prohibited person has caused significant issues in his life and has chilled his constitutionally protected activity of owning or possessing firearms because he does not want to be falsely arrested and/or prosecuted for enjoying his rights secured by the Second Amendment.

65. The Defendants' actions of failing to process the NICS appeal and correct the erroneous record infringe on Lalonde's Second Amendment right to own and possess firearms.

14

## COUNT I - 18 U.S.C. § 925A

66.  Plaintiff incorporates each previous paragraph as if set forth herein again.

67. 18 U.S.C. § 925A provides

Any person denied a firearm pursuant to subsection (s) or (t) of section 922—

(1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or

(2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

68.  Plaintiff requests that orders issue directing that any erroneous or outdated information be corrected, and his status as a prohibited person be lifted immediately.

15

69. Plaintiff also requests that an order issue directing Defendants to issue Plaintiff a UPIN (Unique Personal Identification Number) so future transactions, for which delays or denials could reasonably reoccur, would be less likely to do so.

## COUNT II – VIOLATION OF THE SECOND AMENDMENT

70. Plaintiff incorporates each previous paragraph as if set forth herein again.

71. Defendants' conduct burdens Plaintiff's Second Amendment and all similarly situated individuals' rights as it prohibits them from purchasing firearms in their state of residence.

72. Defendants' conduct additionally burdens Plaintiff's Second Amendment rights as Defendants act to arbitrarily and capriciously revoke Plaintiff's Second Amendment rights without due process of law.

73. Plaintiff and all non-prohibited individuals have a right to purchase a firearm from an FFL and but for Defendants denying Plaintiff his rights, Plaintiff and all other similarly situated individuals would be allowed to purchase a firearm from an FFL.

74. Additionally, Plaintiff is not a prohibited person and the Defendants should be immediately enjoined from denying Plaintiff and all similarly situated individuals their Second Amendment rights.

16

75. Plaintiff also requests his attorneys' fees and costs be awarded to Plaintiff and request any other relief that they may be entitled to.

## COUNT III - (DECLARATORY JUDGMENT)

76. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

77. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

78. Absent a declaratory judgment, there is a substantial likelihood that Plaintiff will suffer irreparable injury in the future.

79. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

80. This Court possesses an independent basis for jurisdiction over the parties.

81. A judgment declaring regarding the complained about policies will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

82. Defendants' laws, customs, practices and policies violates the Second Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution and applicable statutory law, facially and as applied against the Plaintiff in this action, damaging them. Plaintiff are therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

## COUNT IV – VIOLATIONS OF PLAINTIFF'S DUE PROCESS RIGHTS

83. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

84. The Fifth Amendment to the United States Constitution says to the federal government that no one shall be "deprived of life, liberty or property without due process of law."

85. In determining the amount of process due, the court should weigh three factors: 1) The interests of the individual in retaining their property and the injury threatened by the official action; 2) The risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; 3) The costs and administrative burden of the additional process, and the interests of the government in efficient adjudication. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

86. Plaintiff has a protected property interest in his firearms.

87. Plaintiff has a protected liberty interest at stake because the process at issue implicates his Second Amendment rights and an additional liberty interest based on the stigma plus test as described below.

88. In *Wisconsin v. Constantineau,* the Supreme Court held that a liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

89. This holding has come to be known as the "stigma-plus test." *See Hart v. Parks,* 450 F.3d 1059, 1070 (9th Cir.2006). ("the plaintiff must show that the injury to reputation *caused* the denial of a federally protected right")

90. Here, Plaintiff can show he survives the stigma-plus test because he has suffered harm due to his erroneous denial by the federal government because law enforcement, firearms dealers, potential employers, and other members of the community now believe he is prohibited from owning a firearm due to criminal activity.  Thus, he survives the stigma portion of the test.

91. Plaintiff survives the plus portion of this test because Plaintiff has had the alteration or extinguishment of "a right or status previously recognized by state law" i.e. his right to own and purchase firearms.

19

92. Thus, Plaintiff meets the stigma-plus test and has an additional liberty interest at stake based on these grounds.

93. As discussed above Plaintiff has been erroneously determined to be prohibited from owning a firearm and has no means to appeal his denial because of Defendants' decision to no longer process NICS appeals.

94. In *Humphries v. County of Los Angeles*, 554 F. 3d 1170 - Court of Appeals, (9th Circuit 2008), the Ninth Circuit concluded that California's database of "reports of suspected child abuse and severe neglect," known as the Child Abuse Central Index or CACI. CAL. PENAL CODE § 11170(a)(2) violated Due Process because it was extremely difficult to remove one's name from the registry even if a person could prove they had been erroneously placed on the Index.

95. The Second Circuit found a due process violation in similar circumstances in *Valmonte v. Bane* 18 F.3d 992 (2d Cir. 1994).

96. Here, Plaintiff's due process claim is even greater because he has no means to demonstrate he is not a prohibited person other than filing this lawsuit.

97. Plaintiff has both procedural and substantive due process rights. Plaintiff has had his procedural due process rights violated in that he has

20

been unlawfully denied firearms transactions and the FBI will not process his appeal.

98. This violation could be easily corrected if Defendants were to start processing appeals again.

99. For the above reasons, Plaintiff requests this Court find that Defendants have violated Plaintiff's Due Process rights.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(1) Order Defendants to correct their records on Plaintiff to reflect that he is not forbidden to purchase, receive, or possess a firearm;

(2) Order Defendants to issue Plaintiff a UPIN;

(3) Declaratory relief to find that Defendants conduct violate applicable statutory law, the Fifth Amendment and the Second Amendment;

(4) Injunctive relief against Defendants' conduct which violates applicable statutory law, the Fifth Amendment and the Second Amendment; and

(5) That Plaintiff be awarded his costs and attorneys' fees and any and all other relief he is entitled to.

Dated: July 19th, 2018.

Respectfully Submitted,


/s/ *Benjamin Max Blatt*
Benjamin Max Blatt
P.O. Box 221
South Bend, IN 46624-0221
(574) 360-4039
bblatt11@gmail.com
IN Bar# 28472-71
*Counsel for Plaintiff*